UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LAC Enterprises, Inc., | Case No. 22-CV-1291 (KMM/ECW) |
| Plaintiff, | |
| v. | ORDER |
| Wholesale Tree, Inc., and Braun Nursery, Ltd., | |
| Defendants. | |

This case involves the loss of 27 oak trees due to an apparent infestation by invasive moths and a dispute about who is to blame for that infestation. Plaintiff LAC Enterprises, Inc. ("LAC") obtained the trees from Defendant Braun Nursery, Ltd. ("Braun Nursery") and Wholesale Tree, Inc. ("Wholesale Tree") (collectively, "Defendants"). LAC alleges that it was forced to incur expenses for the storage, burning, and burial of the affected trees, which were meant to be planted as part of a landscaping contract with the city of Rochester, Minnesota. LAC blames the Defendants for the condition of the trees, which it alleges were infested before delivery, and seeks recovery under several theories of liability. Defendants deny that the trees were infested before LAC received them. Defendants now each move separately for summary judgment. For the following reasons, Defendants' motions are granted.

1

I.      **Facts and Procedural History**

LAC is a landscaping company and a Minnesota corporation. ECF 1-1 at 1. Wholesale Tree is a Michigan corporation that "provides a diverse selection of premium plant material at field direct prices" and that also acts as a broker between buyers and growers of plants. ECF 27 at 4. Braun Nursery is a Canadian tree grower and seller. ECF 9 at 1. According to the complaint, LAC won a landscaping contract with Rochester in April 2020, which included acquiring and planting a number of oak trees in the city's downtown area. ECF 1-1 at 4. LAC turned to Wholesale Tree to help it locate the trees for the Rochester project. *Id*. Wholesale Tree found the required trees at Braun Nursery, in Ontario, Canada, and LAC agreed to buy them. *Id*. The trees were transported to the United States by Wilson International, a non-party to this lawsuit. *Id*. The trees crossed the Canadian border on or around May 25, 2020. *See, e.g.*, ECF 40-1 at 16 (Department of Homeland Security, U.S. Customs and Border Entry Summary).

The trees were sent at LAC's request to Jim Whiting Nursey & Garden Center ("Whiting Nursery") in Rochester. *Id*. Whiting Nursery is also not a party to this lawsuit. There is some confusion in the record as to when the trees arrived at Whiting Nursery. According to the complaint, Whiting Nursery received the trees in "June 2020" *Id*. But e-mails attached to Wholesale Tree's summary judgment motion suggest that Whiting Nursery already had the trees by May 27, 2020. *See* ECF 28-8 at 1 (e-mail from LAC's subsidiary Windsor Companies to Wholesale Tree describing condition of trees received at Whiting Nursery). In any event, by the second half of June, the trees were at the nursery and something was clearly and significantly amiss. According to LAC's

2

complaint, on June 21, 2020, Whiting Nursery "discovered" that the trees were infested with spongy moths.[1] Spongy moths are an invasive species to Minnesota that feed on the leaves of trees, including oaks, leading to defoliation. *See* Information about the spongy moth, Minnesota Department of Natural Resources, https://www.dnr.state.mn.us/invasives/terrestrialanimals/spongymoth/index.html (last visited January 22, 2024). Repeated defoliation by spongy moths can kill trees. *Id*. On July 17 and July 20, 2020, an inspector from the Minnesota Department of Agriculture examined the trees and determined the presence of "[g]ypsy moth life stages identified" on the oak trees. *See, e.g.*, ECF 28-10 at 1–2. The inspector ordered the trees to be quarantined and treated or burned and buried, to prevent further spread of the moths. *Id*. Soon thereafter, Rochester informed LAC that it would not accept the trees for planting in the project, even if treated. ECF 1-1 at 5. LAC then instructed Whiting Nursery to burn and bury the trees. *Id*.

LAC commenced this lawsuit on April 8, 2022, by filing a four-count complaint in Hennepin County, Minnesota. *See* ECF 1-1. Defendant Wholesale Tree removed the case to the federal District of Minnesota on May 12, 2022. See ECF 1. The parties engaged in fact discovery throughout the remainder of 2022 and the beginning of 2023, according to the Court's Scheduling Order. *See* ECF 11 (providing a deadline of March 1, 2023 for the

---

[1] The spongy moth is the common name for the species *Lymantria dispar*. The parties refer to this species as the "gypsy moth." The term gypsy can have derogatory meaning for Romani people, and the moth's common name was changed in 2021. *See* https://www.dnr.state.mn.us/invasives/terrestrialanimals/spongymoth/index.html#:~:text=The%20Entomological%20Society%20of%20America,derogatory%20term%20for%20Romani%20people. The Court will refer to the moths as spongy moths, except when necessary to quote or reference the parties' briefing or evidence in the record.

close of fact discovery). The Scheduling Order also set deadlines for the disclosure of plaintiff's and defendants' expert witnesses on January 13, 2023 and February 15, 2023, respectively, and for the close of expert discovery on April 14, 2023. *Id*. at 3.

On April 18, 2023, LAC attempted to disclose Kimberly Thielen Cremers, a Minnesota Department of Agriculture employee, as an expert witness. ECF 19. LAC's disclosure stated that Ms. Cremers would "testify to her review of the trees delivered, existence of gypsy moth, how gypsy moth appears and length of time for gypsy moth to develop versus growing on trees." *Id*. Three days later, LAC filed three more documents containing various answers and responses to Defendants' discovery requests. *See* ECF 20, 21, and 22. On May 8, 2023, Magistrate Judge Elizabeth Cowan Wright struck LAC's expert disclosure and other discovery filings during a hearing concerning the timeliness of those filings. ECF 24. Judge Cowan Wright further ordered that LAC was "precluded from relying on Kimberly Thielen Cremers as an expert at trial or in connection with any dispositive motion. Plaintiff is specifically precluded from relying on Ms. Thielen Cremers to testify as to how gypsy moth appears and length of time for gypsy moth to develop versus growing on trees." *Id*. On June 14, 2023, Defendants filed the pending summary judgment motions. *See* ECF 25, 30.

## II.     Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must demonstrate that the

material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021).

### III.     Analysis

LAC asserts four causes of action in total. LAC asserts a claim of breach of contract against Wholesale Tree, only. Breach of the implied covenant of good faith and fair dealing, promissory estoppel, and negligence are asserted against both Defendants. Defendants raise various arguments concerning the viability of each of LAC's claims, but the Court needs only to focus on one aspect of each cause of action to reach its decision. That is because plaintiff's four claims are all predicated on a common factual necessity:

material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021).

### III.     Analysis

LAC asserts four causes of action in total. LAC asserts a claim of breach of contract against Wholesale Tree, only. Breach of the implied covenant of good faith and fair dealing, promissory estoppel, and negligence are asserted against both Defendants. Defendants raise various arguments concerning the viability of each of LAC's claims, but the Court needs only to focus on one aspect of each cause of action to reach its decision. That is because plaintiff's four claims are all predicated on a common factual necessity:

that the moths were already on the trees when they arrived at Whiting Nursery.[2] But a lack of evidence in support of this universally material fact precludes LAC from establishing at least one element of each of its claims under the applicable substantive law. *See Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011) (breach of the contract by defendant is an element of a breach of contract claim); *In re Hennepin Cty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995) (defendant breaches covenant of good faith and fair dealing by unjustifiably hindering the other party's performance of a contract); *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000) (plaintiff's detrimental reliance on a promise by defendant is an element of a promissory estoppel claim); *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007) (breach of a duty of care by defendant is an element of a negligence claim). Accordingly, the Court will grant the pending motions.

This is what the record shows: First, there are two "phytosanitary certificates" from the Canadian Food Inspection Agency in Hamilton, Ontario. *See* ECF 40-4 at 5, 7. These certificates show that 27 oak trees originating in Ontario, Canada were inspected on May 20, 2020. *Id*. The trees were examined and found to be "free from gypsy moth (*lymantria dispar*)" by a Canadian export inspector. *Id*. Next, the trees were received at

---

[2] In turn, LAC articulates a theory of breach of contract based on the assertion that Wholesale Tree breached a contract "by providing [LAC] with diseased trees" (*see* ECF 37 at 7); a theory that the implied covenant of fair dealing was violated because "[b]y delivering diseased trees to [LAC], Defendant[s] … clearly hindered [LAC's] ability to provide the trees" for the Rochester project (*id.* at 9); a theory of promissory estoppel based on LAC's reliance on a promise that it "would receive trees free from disease and pests" from Defendants (*id.* at 10); and a theory of negligence based on the assertion that Defendants breached a duty of care by "providing [LAC] with diseased trees" (*id.* at 12).

Whiting Nursery, either in late May or early June of 2020.³ ECF 1-1 at 5; ECF 28-8 at 1. There is no evidence that anyone observed or reported a moth infestation upon delivery, although there is evidence that the trees were carefully inspected because other damage was noted. *See* ECF 28-8 at 1 (e-mail to from LAC's subsidiary Windsor Companies to Wholesale Tree, describing damage to some of the trees' roots balls). The presence of the moths, or their suspected presence, was discovered later, allegedly in late June. ECF 1-1 at 5. Although LAC provides no evidence for the timing of this discovery beyond its own allegation, Defendants do not appear to dispute that someone did, in fact, come to find that the trees were infested, around this time. Finally, an inspection in July 2020 by the Minnesota Department of Agriculture found the presence of "[g]ypsy moth life stages" on the trees, which were ordered quarantined or destroyed. ECF 40-6 at 1–2; *see* ECF 1-1 at 5.

Based on the factual record discussed above, Defendants maintain that LAC can prove only that the trees became infested, at the earliest, in June 2020. *See, e.g.*, ECF 27 at 11–12; ECF 32 at 1–2. LAC, on the other hand, argues that the record is sufficient to establish that the moths were already on the trees "prior to leaving Canada or were

---

³ As noted above, the evidence in the record more plausibly indicates that the trees had reached Whiting Nursery by May 27, 2020. *See* ECF 28-8 at 1.

infested with gypsy moth while under the control of Defendants."[4] ECF 37 at 6. LAC's argument rests on the contention that spongy moths would have necessarily been in an immature state before leaving Canada and that the moths must have gone undetected until reaching a more mature life stage. *Id*. Defendants deny that the moths would have been overlooked, assert that LAC has no admissible evidence that would support such an argument, and maintain that LAC's theories must be based on expert opinion, which LAC failed to produce. *See, e.g.*, ECF 27 at 22–27; ECF 32 at 8–13; ECF 46 at 9–10; ECF 48 at 7–12. In turn, LAC argues that it does not need an expert to establish the life stages of the gypsy moth. ECF 37 at 5–6 ("An expert is not needed to explain how the trees could have been infested with gypsy moth over a period of time, as it is known that females lay eggs on the trunks of trees around the winter time, and the eggs hatch in early spring. The hatchlings are small caterpillars that climb the trees that strip foliage from the trees."). LAC also argues that the existing record is sufficient to submit to a jury. *Id*. at 5–6 (arguing that "it is easily understandable that [sic] jury could determine [based on the existing factual record] that the trees were infested with gypsy moth prior to leaving

---

[4] LAC points out that a third-party company, Willson International, was contracted to deliver the trees, and LAC's briefing hints at an alternative theory that the trees could have become infested during transport. *See* ECF 37 at 6 ("Plaintiff does not need to show that the trees were infested with gypsy moth at the times [sic] the trees left Canada, only that the trees were infested at the time they appeared at Whiting Nursery."). But LAC provides no facts to support an in-transit theory. Simply put, there is nothing in the record from which a jury could reasonably find that the moths infested the trees during the brief window after the Canadian inspection and before delivery. Likewise, LAC provides no cognizable legal argument as to why an in-transit infestation would create liability for one or both Defendants. LAC merely states the legal conclusion that because it was "not involved" in the selection of Willson International, the "trees were in the sole control and possession of Defendants up until the trees arrived at Whiting Nursery." *Id*.

Canada or were infested with gypsy moth while under the control of Defendants"). The Court disagrees with LAC for several reasons.

### *Expert Opinion*

First, LAC does in fact require expert opinion to advance its theories around the developmental characteristics of the spongy moth. As a threshold matter, LAC must show the existence of a dispute of material fact to survive this motion and must do so in reliance upon admissible evidence. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005) ("The nonmoving party must show by admissible evidence that specific facts remain which create a genuine issue for trial."). Here, LAC simply contends that "it is known" that this particular species of insect lays its eggs during a particular time of the year, when those eggs hatch, what the hatchlings do next, and so forth. ECF 37 at 5–6. This statement falls far short of raising a genuine dispute of material fact because it fails to point the Court toward any admissible evidence that could support it.

First, to the extent that LAC means to suggest that information about the life stages of the spongy moth constitutes one or more adjudicative facts that may be simply admitted via judicial notice, the Court disagrees. "Judicial notice is appropriate only as to 'a fact that is not subject to reasonable dispute' either because it 'is generally known within the trial court's territorial jurisdiction' or because it 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Leventhal v. Tomford*, No. 18-CV-0320 (ECT/KMM), 2018 WL 10561507, at *1 (D. Minn. Dec. 26, 2018) (quoting Fed. R. Evid. 201(b)(1)–(2)). The Court finds that detailed information about the life stages of the spongy moth does not fall within either category. *See Am.*

9

*Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 798 (8th Cir. 2009) (cautioning courts against taking judicial notice "unless the facts are matters of common knowledge or are capable of certain verification") (internal quotations omitted).

But even if the Court were to allow for the possibility of some limited judicial notice that the spongy moth undergoes changes on the way to biological maturity, it would not make a difference. What LAC needs to show is *how* the life stages of the spongy moth matter to the facts of this case. LAC must point to evidence that explains how these spongy moths, due to their specific biological development, would have gone undetected when the trees were inspected at the border in May, and undiscovered upon arrival at the nursery in Rochester, and only appeared when they were inspected again in late June and/or July. Because LAC contends it does not need an expert, it presumably believes it could offer this explanation via the testimony of a lay witness. Again, the Court disagrees. Lay witnesses may testify to facts within their own personal knowledge. *See* Fed. R. Evid. 602. And they may testify to opinions, provided those opinions are not based on scientific, technical, or other specialized knowledge. *See* Fed. R. Evid. 701. Here, personal knowledge of the infestation of the trees in this case is not the issue. What LAC requires is testimony that would connect relevant, scientific facts about the lifecycle of the spongy moth to LAC's naked assertion that the trees were infested "prior to leaving Canada or were infested with gypsy moth while under the control of Defendants."

This would constitute an opinion, and it would not be a lay opinion because it would necessarily be "based on scientific, technical, or other specialized knowledge." To establish similar facts concerning the life stages of insects and their relationship to the

undetected infestation of cargo, parties have relied upon expert opinions. *See, e.g.*, *United States v. Lykes Bros. S.S. Co., Inc.*, 511 F.2d 218, 220 n.2 (5th Cir. 1975) (reproducing expert testimony used to establish the life stages of weevils and their relevance to the infestation of a cargo of flour); *T. J. Stevenson & Co., Inc. v. 81,193 Bags of Flour*, 449 F. Supp. 84, 118 (S.D. Ala. 1976) (expert testifying to his opinion that "insect eggs were in the flour prior to its arrival in the warehouse [where they] subsequently reached the adult stage"), *aff'd in part, rev'd in part on unrelated grounds*, 629 F.2d 338 (5th Cir. 1980); *Land O'Lakes Creameries, Inc. v. Commodity Credit Corp.*, 185 F. Supp. 412, 416–17 (D. Minn. 1960) (discussing the parties' conflicting expert opinions concerning the life stages of beetles that had infested a shipment of dried milk), *aff'd*, 308 F.2d 604 (8th Cir. 1962). In short, LAC needed an expert witness to opine on the life stages of spongy moths and their relevance to the infestation at issue in this case. LAC failed to identify such an expert in the time allotted and therefore failed to introduce admissible evidence that would raise a genuine issue of material fact as to whether the moths were present before they arrived at Whiting Nursery.

### *Other Evidence*

Second, even if LAC could somehow establish the developmental characteristics of the spongy moth without the benefit of expert opinion, it has failed to produce any usable non-expert evidence here. In support of its theories, LAC relies on two exhibits to its opposition brief to the pending motion, which it characterizes as being part of the factual record. *See* ECF 37 at 3. These are: an article from the website of the Smithsonian

Institute (ECF 40-7) (the "Smithsonian Article") and an affidavit[5] by Terry Childers, LAC's owner and president (the "Childers Affidavit"). ECF 40-2. The Smithsonian Article provides an overview of the spongy moth and biological facts about the moth's life cycle. *Id*. An accompanying attorney declaration characterizes the Smithsonian Institute as an entity that "makes known facts regarding the life history and distribution method [sic] gypsy moth." ECF 40 at 1. The Childers Affidavit, on the other hand, discusses the purchase of the trees, their transport, and the discovery of the moths on the trees. ECF 40-2. Defendants raise concerns about the admissibility of both the article and affidavit. *See* ECF 46 at 6–9; ECF 48 at 11–3, 15–16. The Court agrees that neither is admissible, and therefore neither item creates a genuine issue of material fact at summary judgment. *See Sallis*, 408 F.3d at 474.

For the purposes of the pending motion, the Smithsonian Article is being offered for proof of the matter asserted by LAC, which is that the spongy moth has various life stages that affected its detection by Canadian inspectors. It is unclear how LAC believes it would introduce the contents of the article at trial, but having a witness, such as Mr. Childers, testify to the article's contents would constitute inadmissible hearsay under

---

[5] Defendants raise various challenges to the threshold legal sufficiency of the Childers Affidavit, because it is undated, unnotarized, electronically signed, and because the accompanying perjury statement (28 U.S.C. § 1746) contains typographical errors. *See, e.g.*, ECF 48 at 7–8. Rule 56 requires that "an affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Because the Court concludes that the Childers Affidavit fails under Rule 56 because it does not demonstrate Mr. Childers' personal knowledge of critical information and attempts to set out otherwise inadmissible facts, the Court will not consider Defendants' arguments around the formalities the document's execution.

Federal Rule of Evidence 802. And as discussed above, having a lay witness testify to the contents of the article as part of a broader explanation for why the moths went undetected before delivery would contravene rules on lay opinion testimony under Rule 701.[6] Fed. R. Evid. 701.

As with the Smithsonian Article, key statements in the Childers Affidavit constitute hearsay, and the Court has concerns about Mr. Childers' lack of personal knowledge of the issues described in the affidavit. Fed. R. Evid. 602. For instance, Mr. Childers asserts that "[u]pon inspection after the trees arrived at Whiting Nursery, the trees were found to be infested with gypsy moths." ECF 40-2 at 2. To the extent this statement is meant to indicate that moths were discovered *immediately* upon delivery at Whiting Nursery, this contradicts LAC's own allegations and other evidence in the record indicating the moths were discovered after some time had elapsed following delivery. Further, nothing suggests that Mr. Childers personally inspected the trees upon delivery, and the affidavit fails to establish his personal knowledge on this topic. The Court shares Defendants' concerns that Mr. Childers is conveying statements about the post-delivery inspection of the trees made to him by another person; if so, this is inadmissible hearsay. Elsewhere in the affidavit, Mr. Childers states that "[p]rior to the trees arriving at Whiting

---

[6] Besides these admissibility concerns, LAC's article does not actually appear to support the inferences that LAC wishes to draw from it. The article states that "[g]ypsy moths overwinter in the egg stage, and hatch in April or May." ECF 40-7 at 1. The oak trees in this case were inspected by Canadian authorities in May. In other words, taking LAC's article at face value, the trees should have been crawling with "black and hairy" young caterpillars at the *exact* time they were inspected in Canada. *See id*. Notably, LAC's briefing does not address this incongruity or explain why caterpillars would have been more difficult to detect than mature moths.

13

Nursery, no other trees or shrubs at Whiting Nursery had been infected with gypsy moth." *Id*. Again, the affidavit provides no basis for Mr. Childers' personal knowledge of the history of spongy moths at Whiting Nursery. And again, to the extent this statement represents a claim that was conveyed to Mr. Childers by someone with personal knowledge of the Whiting Nursery's history with spongy moths, the hearsay rule clearly precludes Mr. Childers' testimony on the topic.

### *Broader Failures*

Third, setting aside the evidentiary issues *discussed* above, LAC has failed, in the broadest sense, to explain *why* the developmental stages of the spongy moth matter to this case. To be clear, the phytosanitary certificates issued by the Canadian authorities certify that the trees were found to be free of spongy moths, specifically. These are not general inspection documents directed toward a lengthy checklist of pests and diseases. LAC offers no evidence, or even argument, to explain why an inspection directed specifically to detecting the presence of invasive spongy moths would be able to detect the insect in some of its forms—whether eggs, caterpillars, or fully grown moths—but not in other stages. In other words, even if the Court agreed that LAC did not require an expert opinion on the spongy moth and even if the Court found that the Childers Affidavit and Smithsonian Article were admissible and therefore relevant to the summary judgment analysis, LAC has still failed to create a real factual dispute around why the Canadian inspection did not detect the moths.

Perhaps it is LAC's belief that spongy moth eggs or new hatchlings are particularly difficult to detect by inspectors, in general. Or perhaps LAC's theory is that

14

the Canadian authorities mishandled *this* particular inspection of these particular trees, or that Canadian authorities routinely mishandle spongy moth inspections of all trees heading for export. No such arguments are attempted here. But even if they were, it would not matter, because arguments are not evidence. *Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831, 838 (8th Cir. 2006) ("[A]rguments of counsel are not evidence."); *see also Nat'l Bank of Com. of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602, 610 (8th Cir. 1999) ("A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."). Finally, to whatever extent LAC believes it can survive summary judgment on the hope that other, undisclosed evidence or trial testimony will explain the relevance of spongy moth life stages to the Canadian inspection documents, this is mistaken. *Canal Ins. Co. v. Kwik Kargo, Inc.*, No. 08-cv-439 (JNE/RLE), 2009 U.S. Dist. LEXIS 35177, at *11–12 (D. Minn. Apr. 21, 2009) (a party "may not avoid summary judgment by asserting that it can produce evidence that will support its arguments at trial"); *Schiffler v. Home Depot USA, Inc.*, No. 07-cv-4303 (JRT/LIB), 2013 WL 980334, at *8 (D. Minn. Feb. 15, 2003) (a plaintiff cannot defeat summary judgment "by baldly asserting that he intends to produce witnesses and evidence at trial" to support his claims) (quoting *Thulin v. EMC Mortg. Corp.*, No. 06-3514 (RHK/JSM), 2007 U.S. Dist. LEXIS 76864, at *7–9 (D. Minn. Oct. 16, 2007)), *R&R adopted*, No. 06-3514 (RHK/JSM)2013 WL 980330 (D. Minn. Mar. 13, 2013).

### Conclusion

LAC was required to "designate specific facts showing that there is a genuine issue for trial" to survive summary judgment. *Celotex*, 477 U.S. at 324 (internal

15

quotations omitted). Such facts must be supported by admissible evidence. *Sallis*, 408 F.3d at 474. Here, it has failed to do so. Allowing a jury to return a verdict predicated on an understanding of the life stages of the spongy moth and without any evidence concerning the significance of those life stages to the facts of this case would require that jury to engage in impermissible speculation. As such, no reasonable jury could return a verdict for LAC, and Defendants' motions for summary judgment are granted.

IV.     **Order**

Based on the foregoing discussion, **IT IS HEREBY ORDERED THAT** Defendants' Motions for Summary Judgment [ECF 25, 30] are **GRANTED** and this matter is DISMISSED with prejudice.

**Let Judgment be entered accordingly**.

Date: January 22, 2024

                                                *s/Katherine Menendez*
                                                Katherine Menendez
                                                United States District Judge